**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FuturHealth, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-_____ (___) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF TRADE CLAIMANTS, AND 503(b)(9) CLAIMS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") seeks entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Proposed Interim Order" and "Proposed Final Order," respectively), (i) authorizing, but not directing, the Debtor to pay, in the ordinary course of business, certain prepetition amounts on account of certain Trade Claims (as defined herein), (ii) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related to the foregoing, and (iii) granting related relief. In support hereof, the Debtor relies upon and incorporates by reference the *Declaration of Jon Hambidge in Support of FuturHealth, Inc.'s Chapter 11 Petition and First Day Motions* (the "First Day Declaration")[2] filed contemporaneously herewith. In further support of this motion (this "Motion"), the Debtor respectfully states as follows:

[1] The Debtor's mailing address is 325 W Washington Street Suite 2944 San Diego, CA 92103-1946, and the last four digits of the Debtor's federal tax identification number are 1229.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor confirms its consent to the entry of a final order or judgment by the Court with respect to this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules.

## GENERAL BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is operating its business and managing its properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made, and no official committees have been appointed, in this Chapter 11 Case.

5. The Debtor is a direct-to-consumer wellness platform focused on weight management and related wellness services. Through its platform, the Debtor facilitates consumer access to third-party medical providers, prescription medications, nutrition guidance, and other wellness-related services. The Debtor works with a network of third-party medical providers,

pharmacies, and other service partners and provides consumers access to these services through its Whole Health OS technology platform and related digital channels

6. Additional factual background regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the filing of this Chapter 11 Case is set forth in detail in the First Day Declaration.

## FACTS RELEVANT TO THIS MOTION

7. As described in the First Day Declaration, the Debtor commenced this Chapter 11 Case to pursue a value-maximizing sale transaction or reorganization. During the pendency of the case, the Debtor will continue to rely on Vendors and 503(b)(9) Vendors (each as defined below, and collectively the "Trade Claimants," and the claims owed to the Trade Claimants, the "Trade Claims") to support its ongoing operations. Paying certain Trade Claims will allow the Debtor to continue operating in normal course, thereby enhancing the likelihood that the bankruptcy process does not disrupt business and that the Chapter 11 Case culminates in a value-maximizing transaction. Therefore, the Debtor submits that the relief requested is in the best interests of the Debtor, its estate, its creditors, and other parties in interest, and should be granted.

8. The Trade Claimants provide critical services to the Debtor that allow it to operate its business, including (i) pharmacy/prescription services, (ii) integrated customer service platforms, (iii) integrated telehealth services, (iv) integrated payment processing services, (v) operational software; and (vi) compliance services with local, state, and federal regulations. Most of these services are built into, or works in conjunction with, its Whole Health OS technology platform and related digital channels.

**A. Vendors**

***i. Critical Vendors***

9. To operate its business, the Debtor requires, *inter alia*, mission-critical services to allow its direct-to-consumer prescription drug model to work effectively and efficiently. In the ordinary course of business, the Debtor incurs obligations to vendors that provide such services critical to running its business (collectively, the "Critical Vendors" and the claims owed to the Critical Vendors, the "Critical Vendor Claims").

10. Critical Vendors may refuse to continue providing materials or services to the Debtor or may alter their historical terms absent payment of prepetition claims. Any disruption to the Debtor's existing operations could jeopardize the prospect of a value-maximizing sale transaction or reorganization and cause harm that would likely outweigh the minimal cost of payment of the Critical Vendor Claims.

11. Given the specialized nature of the Critical Vendors' goods and services, even a temporary disruption could have severe negative effects on the Debtor's business and this Chapter 11 Case. Accordingly, the Debtor seeks authorization to pay, in its discretion, certain Critical Vendor Claims to ensure the Debtor's continued receipt of goods and services and favorable credit terms from the Critical Vendors.

12. The Debtor has thoroughly reviewed its business relationships and identified Critical Vendors whose particular goods or services are essential to the Debtor's operations and, if not obtained, would cause immediate and irreparable harm to the Debtor's business. In this process, the Debtor, with the assistance of its advisors, assessed a variety of factors, including: (a) the goods or services provided by a vendor or supplier; (b) whether goods or services are provided pursuant to a contract or on a purchase order basis; (c) whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or provide critical

services on a postpetition basis; (d) whether failure to pay a particular vendor could result in contraction of trade terms; (e) whether the vendor is a sole-source, limited-source, or high-volume supplier for "in-demand" inventory; (f) whether alternative vendors are available that could provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtor would be able to continue operating while transitioning business to those vendors; (g) whether the Debtor's inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor, resulting in the inability of the vendor to provide goods or services; and (h) the extent to which suppliers may have an administrative expense claim pursuant to section 503(b)(9) of the Bankruptcy Code.

13. As a result of this analysis, the Debtor has identified the universe and type of vendors that are essential to the Debtor's continuing operations.

**B. 503(b)(9) Claims**

14. The Debtor has certain Critical Vendors who may be entitled to administrative expense status under section 503(b)(9) of the Bankruptcy Code. Specifically, the Debtor has identified certain claims that may be entitled to priority status under section 503(b)(9) of the Bankruptcy Code because they are undisputed obligations for goods received by the Debtor in the ordinary course of business in the 20 days prior to the Petition Date (such claims, the "503(b)(9) Claims"). To the extent that these Critical Vendors have valid 503(b)(9) Claims, such claims would be entitled to administrative expense claim priority, which would need to be paid ahead of unsecured claims. The fact that certain of the Vendor Claims may be 503(b)(9) Claims provides an additional basis for these claims to be paid.

15. Although the Debtor is not currently aware of any outstanding 503(b)(9) Claims, out of an abundance of caution, the Debtor is seeking authority, but not direction, to pay any outstanding 503(b)(9) Claims to Critical Vendors in the ordinary course of business.

**CUSTOMARY TRADE TERMS**

16. Despite the critical need for the essential goods and services provided by the Trade Claimants, the Debtor historically has sought to bargain with its vendors to achieve the lowest price, the best service and quality, and the most favorable payment terms possible for each necessary product or service. Nonetheless, the Debtor recognizes that efficiency in procurement is critical to achieving profitability and, to that end, the Debtor has developed valued relationships with many vendors who have met the Debtor's standards for price, service, quality, and payment terms. The Debtor hopes to maintain and improve upon those vendor relationships on a postpetition basis.

17. To further ensure that the Debtor's existing business operations will be minimally impacted during that process, the Debtor will use commercially reasonable efforts to condition payment of the Trade Claims upon each Trade Claimant's agreement, as applicable, to continue supplying goods and services on terms at least as favorable to the Debtor as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs) that were in place in the 120 days immediately prior to the Petition Date, or on such terms that are otherwise acceptable to the Debtor, in light of customary industry practices (the "Customary Trade Terms").

**RELIEF REQUESTED**

18. By this Motion, the Debtor seeks entry of the Proposed Interim Order and the Proposed Final Order, (a) authorizing, but not directing, the Debtor, in its discretion, to pay Trade Claims up to the aggregate amount of $1,000,000, $500,000 of which may come due during the

first thirty (30) days of the case (the "Interim Period"); (b) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related thereto; and (c) granting related relief. By this Motion, the Debtor is only seeking to pay amounts necessary to preserve the value of the Debtor's estates while the Debtor pursues a value-maximizing transaction.

19. The Debtor further requests that it be authorized, but not required, in its reasonable business judgment, to condition the payment of any Trade Claims on the agreement of each Trade Claimant to continue supplying goods or services to the Debtor according to Customary Trade Terms.

20. In addition, the Debtor requests that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services pursuant to Customary Trade Terms, then the Debtor reserves the right to seek any appropriate remedy.

## BASIS FOR RELIEF

### I. THE COURT SHOULD AUTHORIZE, BUT NOT DIRECT, THE DEBTOR TO PAY THE TRADE CLAIMS IN ITS DISCRETION.

#### A. The Trade Claimants Are Essential to Avoiding any Unexpected or Inopportune Interruption to the Debtor's Business Operations.

21. The Debtor believes the goods and services provided by the Trade Claimants are necessary to ensure that there are not any unexpected or inopportune interruptions to the Debtor's operations. The Trade Claimants are the most cost-efficient and, in many cases, the only source from which the Debtor can procure critical goods and services within a timeframe that would permit the Debtor to avoid unanticipated interruptions, delays, or shutdowns in its operations while they pursue a value-maximizing transaction. In addition, the Trade Claimants may argue that they are not subject to the jurisdiction of this Court or the provisions of the Bankruptcy Code that would

otherwise protect the Debtor's assets and business operations and may take actions that would disrupt the Debtor's operations.

22. Any failure to pay the Trade Claims could, in the Debtor's business judgment, result in many of the Trade Claimants refusing to provide necessary goods and services to the Debtor. Any disruption, delay, or shutdown in the Debtor's operations resulting from a refusal by the Trade Claimants to do business with the Debtor on a postpetition basis would have disastrous effects on the Debtor's business and undermine the Debtor's ability to preserve and maximize the value of its estates. Maintaining the business and avoiding disruptions in its operations until the consummation of a sale process or reorganization is in the best interest of the Debtor, its creditors, and stakeholders.

23. As noted above, the Debtor has reviewed its accounts payable and undertaken a process to identify only those vendors who are essential to avoid any disruption to its operations. The Debtor has further developed certain procedures that, if and when implemented, in its reasonable business judgment, will ensure that the Trade Claimants receiving payment on account of prepetition claims will continue to provide goods and services to the Debtor based upon Customary Trade Terms.

24. The Debtor believes that authority to pay the Trade Claims is vital to its efforts to preserve and maximize the value of its estates. If the Debtor is not authorized to pay the Trade Claims, the Debtor believes that many of the Trade Claimants may refuse to do business with it and some may have to cease their own operations. Such a result would be devastating to the Debtor's efforts to successfully navigate this Chapter 11 Case, to the detriment of the Debtor's estate and creditors. Moreover, the continued availability of trade credit in amounts and on terms

consistent with the Debtor's prepetition trade terms is critical. The retention or reinstatement of the Customary Trade Terms will enable the Debtor to maximize the value of its business.

25. For the foregoing reasons, the Debtor respectfully submits that payment of the Trade Claims in the Debtor's discretion is in the best interests of the Debtor, its estates, and creditors.

**B. Payment of the Trade Claims Is Warranted Pursuant to Sections 105(a) and 363 of the Bankruptcy Code.**

26. The Court may authorize payment of the Trade Claims pursuant to section 363 of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See In re Hancock Fabrics, Inc.*, Case No. 07-10353 (BLS) (Bankr. D. Del. Apr. 13, 2007) (authorizing payment of prepetition claims to certain vendors deemed critical by debtors pursuant to section 363); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain claims).

27. Additionally, section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the postpetition payment of prepetition claims of "critical vendors" where such payment is necessary to preserve the value of a debtor's estate. *See, e.g.*, *Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks."). Courts have likewise acknowledged that "[u]nder [section] 105,

the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); *see also In re Just for Feet, Inc.,* 242 B.R. 821, 825 (D. Del. 1999) (citing *In re Penn Central Transp. Co.,* 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation).

28. In a long line of well-established cases, courts have consistently permitted postpetition payment of prepetition obligations when necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (permitting payment of pre-receivership claim to prevent "stoppage of [crucial] business relations"); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases).

29. This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. *See Just for Feet*, 242 B.R. at 826 (finding that "to invoke the necessity of payment doctrine, a debtor must show that payment of the prepetition claims is critical to the debtor's [continued operation]"); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f

payment of a prepetition claim is essential to the continued operation of [the debtor], payment may be authorized"); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The doctrine of necessity is most often invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of prepetition claims. In one case, the court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988).

30. As explained above, the goods and services provided by the Trade Claimants are essential to ensure that there is no disruption in the operation of the Debtor's business or harm to the Debtor's reorganization efforts. Moreover, the Debtor does not believe there are cost-effective or readily accessible alternatives to the Trade Claimants. In light of the foregoing, the Debtor submits that payment of the Trade Claims is a sound discretion of its business judgment and is plainly in the best interests of its estates and creditors.

31. Accordingly, the Debtor submits that the Court should exercise its equitable power to grant the relief requested herein.

**C. The Court Should Authorize Payment of the Trade Claims as a Valid Exercise of the Debtor's Fiduciary Duties.**

32. Authority for satisfying the Trade Claims also may be found in sections 1107(a) and 1108 of the Bankruptcy Code. The Debtor, operating its business as a debtor in possession under sections 1107(a) and 1108, is a fiduciary "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re*

*CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

33. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id.* at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.*

34. Payment of certain of the Trade Claims meets each element of the *CoServ* court's standard. As described above, the Debtor believes that certain Trade Claimants will refuse, or be unable to, provide goods or services to the Debtor on a postpetition basis if their prepetition balances are not paid, thereby creating the significant risk that the Debtor will experience an unexpected or inopportune interruption to its operations. Any such interruption would diminish estate value and frustrate the Debtor's pursuit of a sale of substantially all of its assets or reorganization of its business. The harm and economic disadvantage that would stem from the failure of any of the Trade Claimants to perform is disproportionate to the amount of Trade Claims.

35. Finally, the Debtor has examined other options short of payment of the Trade Claims and have determined that, to avoid an unexpected or inopportune interruption to its business operations, there exists no practical alternative to its payment of such claims. Therefore, the Debtor can only meet its fiduciary duties as a debtor in possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Trade Claims.

**D. Payment of Certain Trade Claims Will Have Little to No Effect on Creditor Recoveries in This Chapter 11 Case.**

36. As stated previously, certain of the Trade Claimants may be entitled to request an administrative expense priority claim to the extent that the Debtor received goods, in the ordinary course of business, within the 20-day period immediately prior to the Petition Date. Because such claims are entitled to priority status under section 503(b)(9) of the Bankruptcy Code, those claims must be paid in full ahead of unsecured claims. Although section 503(b)(9) of the Bankruptcy Code does not specify a time for payment of these expenses, bankruptcy courts have the discretion to allow for distributions to administrative claimants prior to confirmation if the debtor has the ability to pay and there is a need to pay. Indeed, nothing in the Bankruptcy Code prohibits the Debtor from paying such claims sooner if they choose to do so, or the Court from exercising its discretion to authorize the postpetition payment of such obligations. As a result, the Debtor respectfully submits that it should have the authority (but not the direction) to pay such claims, in the ordinary course of business, during the pendency of this Chapter 11 Case, to the extent necessary to preserve and maximize the value of the Debtor's estates.

37. Courts in this jurisdiction have exercised their discretion and have regularly authorized the payment of prepetition claims under section 503(b)(9) of the Bankruptcy Code at the outset of a chapter 11 case. *See, e.g.*, *In re West Marine, Inc.*, Case No. 26-10794 (KBO), Docket No. 203 (Bankr. D. Del. June 9, 2026) (approving payment of claims under section

503(b)(9) of the Bankruptcy Code); *In re Searles Valley Minerals Inc.*, Case No. 26-10966 (BLS), Docket No. 144 (Bankr. D. Del. July 7, 2026) (same); *In re Avenger Flight Group, LLC*, Case No. 26-10183 (MFW), Docket No. 128 (Bankr. D. Del. Mar. 6, 2026); *In re Norcold LLC*, Case No. 25-11933 (TMH), Docket No. 113 (Bankr. D. Del. Dec. 9, 2025); *In re At Home Group, Inc.*, Case No. 25-11120 (JKS), Docket No. 297 (Bankr. D. Del. July 14, 2025); *In re Marelli Automotive Lighting USA LLC*, Case No. 25-11034 (CTG), Docket No. 266 (Bankr. D. Del. July 11, 2025); *In re CalAmp Corp.*, Case No. 24-11136 (LSS), Docket No. 96 (Bankr. D. Del. June 26, 2024).

38. As explained above, it is critical to the Debtor's existing operations and, by extension, the Debtor's sale process, that they continue to receive goods and services, as applicable, from the Trade Claimants on an uninterrupted basis throughout this Chapter 11 Case. The Debtor believes that without the relief requested herein, many of the Trade Claimants may cease delivering goods or providing services to the Debtor, which could have devastating consequences for the Debtor and its estate.

39. Accordingly, for all of the foregoing reasons, the Debtor submits that cause exists for granting the relief requested herein.

## II. THE COURT SHOULD AUTHORIZE THE BANKS TO HONOR AND PROCESS THE DEBTOR'S PAYMENTS ON ACCOUNT OF THE TRADE CLAIMS.

40. The Debtor also requests the Court to authorize the Debtor's banks, when requested by the Debtor, in its discretion, to honor and process checks or electronic fund transfers drawn on the Debtor's bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Debtor further requests that all the Debtor's banks be authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved pursuant to this Motion.

## RESERVATION OF RIGHTS

41. Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, priority, or amount of any claim against the Debtor; (ii) a waiver of the Debtor's or any party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtor or rights of setoff asserted against the Debtor; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity, priority, or amount of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

42. The Court may grant the relief requested in this Motion immediately if the "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008). The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801-02 (3d Cir. 1989). The Debtor submits that, for the reasons already set

forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

**WAIVER OF NOTICE AND STAY UNDER BANKRUPTCY RULE 6004**

43. To the extent that Bankruptcy Rule 6004(a) applies, the Debtor respectfully requests a waiver of such notice requirement in order to successfully implement the foregoing requested relief.

44. The Debtor requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**NOTICE**

45. Notice of this Motion will be provided to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the twenty (20) largest unsecured claims against the Debtor; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the District of Delaware; (e) the state attorneys general for all states in which the Debtor conducts business; (f) the DIP Lender; (g) iHeartMedia; (h) the Debtor's banks; (i) any party that has requested notice pursuant to Bankruptcy Rule 2002. Given that this Motion seeks "first day" relief, within 48 hours of the entry of an order granting this Motion, the Debtor will serve copies of this Motion and any

order entered with respect to this Motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Proposed Interim Order and the Proposed Final Order, substantially in the forms annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: November 1, 2026
Wilmington, Delaware

Respectfully submitted,

*/s/ Maria Kotsiras*

Christopher M. Samis (No. 4909)
R. Stephen McNeill (No. 5210)
Aaron H. Stulman (No. 5807)
Maria Kotsiras (No. 6840)
Andrew C. Ehrmann (No. 7395)
**ICE MILLER LLP**
500 Delaware Avenue, Suite 220
Wilmington, Delaware 19801
Telephone: (302) 313-0600
Email: christopher.samis@icemiller.com
stephen.mcneill@icemiller.com
aaron.stulman@icemiller.com
maria.kotsiras@icemiller.com
andrew.ehrmann@icemiller.com

*Proposed Counsel for the Debtor and Debtor in Possession*

# EXHIBIT A

## Proposed Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FuturHealth, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-_____ (___)<br><br>**Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF TRADE CLAIMANTS, AND 503(b)(9) CLAIMS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (collectively, the "Debtor"), for entry of an interim order (this "Interim Order"), (i) authorizing, but not directing, the Debtor, in its discretion, to pay certain Trade Claims, (ii) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related thereto, and (iii) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this Chapter 11 Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were

[1] The Debtor's mailing address is 325 W Washington Street Suite 2944 San Diego, CA 92103-1946, and the last four digits of the Debtor's federal tax identification number are 1229.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

appropriate under the circumstances and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT,

1. The Motion is GRANTED, on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on ______, 2026, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be **received** by the following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on ______, 2026**: (i) proposed counsel to the Debtor, Ice Miller LLP, 500 Delaware Avenue, Suite 220 , Wilmington, DE 19801, Attn.: Christopher M. Samis (christopher.samis@icemiller.com), R. Stephen McNeill (steve.mcneill@icemiller.com), Aaron H. Stulman (aaron.stulman@icemiller.com), Maria Kotsiras (maria.kotsiras@icemiller.com), and Andrew C. Ehrmann (andrew.ehrmann@icemiller.com); (ii) counsel to the DIP Lender, Fishel Law Group, 602 Sawyer Street, Suite 400, Houston, TX 77007, Attn: Michael Fishel (michael@fishellawgroup.com) and Morris James LLP, 3205 Avenue North Boulevard, Suite 100, Wilmington, DE 19801, Attn: Eric J. Monzo (emonzo@morrisjames.com); (iii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Hannah McCollum (USTP) (Hannah.McCollum@usdoj.gov); and (iv) if any statutory committee has been appointed in this case, counsel to such committee.

3. The Debtor is authorized, but not directed, to pay, in its discretion, the Trade Claims up to the aggregate amount of $500,000 during the Interim Period.

4. The Debtor is authorized, but not directed, to condition payment of the Trade Claims upon such Trade Claimant's agreement to continue supplying goods or services to the Debtor on terms at least as favorable to the Debtor as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs) that were in place in the 120 days immediately prior to the Petition Date, or on such terms that are otherwise acceptable to the Debtor in light of Customary Trade Terms. The Debtor shall provide a copy of this Interim Order to the applicable party prior to such party's acceptance of any payment hereunder. Any party that accepts the terms set forth herein through a signed agreement with the Debtor (a "Vendor Agreement") shall be deemed to have agreed to the terms and provisions of this Interim Order, conditioned upon the Debtor providing actual notice of the Interim Order to such party, and if such party executes a Vendor Agreement and does not continue supplying goods or services to the Debtor in accordance with Customary Trade Terms after agreeing to do so, then the Debtor reserves the right to seek any appropriate remedy.

5. Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, priority, or amount of any claim against the Debtor; (ii) a waiver of the Debtor's or any party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtor or rights of setoff asserted against the Debtor; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim. Likewise, any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity, priority, or amount of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

6. The banks on which checks are drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Interim Order.

7. The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests made in payment of the prepetition obligations approved herein that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with any prepetition claims of the Trade Claimants.

8. This Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the interim relief requested is necessary to avoid immediate and irreparable harm.

9. The notice requirements of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 9013-1(m) which govern the interim request for relief in the Motion are satisfied.

10. Consistent with Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof; this Interim Order is not stayed.

11. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

12. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Interim Order.

# **EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FuturHealth, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-_____ (___)<br><br>**Re: Docket Nos. __ & __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION CLAIMS OF TRADE CLAIMANTS, AND 503(b)(9) CLAIMS; (II) AUTHORIZING BANKS TO HONOR AND PROCESS CHECK AND ELECTRONIC TRANSFER REQUESTS RELATED THERETO; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (collectively, the "Debtor") for entry of a final order (this "Final Order"), (i) authorizing, but not directing, the Debtor, in its discretion, to pay certain Trade Claims, (ii) authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related thereto, and (iii) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this Chapter 11 Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were

[1] The Debtor's mailing address is 325 W Washington Street Suite 2944 San Diego, CA 92103-1946, and the last four digits of the Debtor's federal tax identification number are 1229.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

appropriate and no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT,

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtor is authorized, but not directed, to pay, in its discretion, the Trade Claims; *provided that* the Debtor shall only be authorized to pay Trade Claims up to the aggregate amount of $1,000,000 on account of prepetition Trade Claims on a final basis.

3. The Debtor is authorized, but not directed, to, condition payment of the Trade Claims, upon such Trade Claimant's agreement to continue supplying goods or services to the Debtor on terms at least as favorable to the Debtor as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, availability, and other programs) that were in place in the 120 days immediately prior to the Petition Date, or on such terms that are otherwise acceptable to the Debtor, in light of Customary Trade Terms. The Debtor shall provide a copy of this Final Order to the applicable party prior to such party's acceptance of any payment hereunder. Any party that accepts the terms set forth herein through a signed agreement with the Debtor (a "Vendor Agreement") shall be deemed to have agreed to the terms and provisions of this Final Order, conditioned upon the Debtor providing actual notice of the Final Order to such party, and if such party executes a Vendor Agreement and does not continue supplying goods or services to the Debtor in accordance with Customary Trade Terms after agreeing to do so, then the Debtor reserves the right to seek any appropriate remedy.

4. Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, priority, or amount of any claim against the Debtor; (ii) a waiver of the Debtor's or

any party's in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtor or rights of setoff asserted against the Debtor; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtor and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim. Likewise, any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity, priority, or amount of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

5. The banks on which checks are drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved by this Final Order.

6. The Debtor is authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests made in payment of the prepetition obligations approved herein that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with any prepetition claims of the Trade Claimant.

7. Consistent with Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof; this Final Order is not stayed.

8. All objections to entry of this Final Order, to the extent not withdrawn or settled, are overruled.

9. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

10. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.