**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>FuturHealth, Inc.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11748 (JKS)<br><br>**Re: Docket No. 25** |

**DECLARATION OF RICHARD KLEIN IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (II) AUTHORIZING THE DEBTOR TO DESIGNATE ONE OR MORE STALKING HORSE BIDDERS AND TO PROVIDE BID PROTECTIONS, (III) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (V) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (VI) GRANTING RELATED RELIEF**

1. I, Richard Klein, make this declaration (this "Declaration") under 28 U.S.C. § 1746 and state as follows:

2. I am an Executive Director and Head of Special Situations at Hilco Corporate Finance LLC ("Hilco"), the investment banking division of Hilco Global, the proposed investment banker to the debtor and debtor in possession (the "Debtor") in the above-captioned chapter 11 case.

3. I submit this Declaration in support of the *Debtor's Motion for Entry of an Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtor's Assets, (II) Authorizing the Debtor to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and*

[1] The Debtor's mailing address is 325 W Washington Street Suite 2944 San Diego, CA 92103-1946, and the last four digits of the Debtor's federal tax identification number are 1229.

*Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* (the "Motion") filed contemporaneously herewith.[2]

4. Except as otherwise indicated herein, all statements set forth in this Declaration are based upon my personal knowledge, my discussions with members of the Debtor's management team and the Debtor's advisors, my review of relevant documents and information concerning the Debtor's operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.

5. I am authorized to submit this Declaration on behalf of the Debtor and am over the age of 18. If I were called upon to testify, I could and would testify to each of the facts set forth below.

## I. Background and Qualifications

6. I have over 30 years of experience advising on distressed sell-side and buy-side mergers and acquisitions transactions, recapitalizations, and restructuring transactions involving middle-market companies. I have advised debtors, boards of directors, official and ad hoc creditors' committees, private equity sponsors, and various creditor constituencies on a wide array of restructurings, including chapter 11 plans of reorganization, out-of-court restructurings, section 363 asset sales, rescue financings, and exchange offerings. I have experience across many industries, including, but not limited to, restaurants, aerospace and defense, consumer and retail, gaming, health care, industrial, and technology. I have extensive experience advising companies in bankruptcy, including Red Lobster Management, LLC, CTN Holdings, Inc., TGI Friday's Inc., Meridian Restaurants Unlimited, LC, One Table Restaurant Brands, LLC, Rubio's Restaurants, Tony Roma's, and Buffet Holdings.

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion. A separate declaration will be filed regarding the entry of the Sale Order.

7. I have been employed by Hilco since April 2023. Prior to joining Hilco, I held Managing Director positions at Raymond James, Miller Buckfire, and Jefferies LLC, where I focused on advising companies, boards of directors, lenders, and other creditor constituencies on restructurings, both in and out of court. I have also advised on a wide array of investment banking transactions, including debt advisory, equity private placements, capital markets, mergers and acquisitions, and fairness and solvency opinions. I began my investment banking career in the financial advisory group at Houlihan Lokey and subsequently served on the fairness opinion committee for Miller Buckfire and its parent, Stifel Financial.

8. I graduated from the University at Albany, State University of New York, in 1994 with a Bachelor of Science in Finance. I am a FINRA-registered representative and hold Series 7, 24, and 63 licenses. I am also a member of the Turnaround Management Association and the American Bankruptcy Institute.

9. Hilco is a financial-services and investment-banking firm that advises financially distressed businesses and their creditor and equity-holder stakeholders in connection with out-of-court and bankruptcy restructurings, reorganizations, mergers and acquisitions, and related transactions. Hilco's professionals have served as investment bankers and financial advisors to debtors, creditors, and creditors' committees in numerous complex restructurings, including *In re Norcold LLC*, Case No. 25-11933 (TMH) (Bankr. D. Del.); *In re Pinstripes Holdings, Inc.*, Case No. 25-11677 (KBO) (Bankr. D. Del.); *In re CTN Holdings, Inc.*, Case No. 25-10603 (TMH) (Bankr. D. Del.); *In re One Table Restaurant Brands, LLC*, Case No. 24-11553 (KBO) (Bankr. D. Del.); *In re TGI Friday's Inc.*, Case No. 24-80069 (SGJ) (Bankr. N.D. Tex.); *In re Red Lobster Management, LLC*, Case No. 24-02486 (GER) (Bankr. M.D. Fla.); *In re VIVUS, Inc.*, Case No. 20-11779 (LSS) (Bankr. D. Del.); *In re FTD Companies, Inc.*, Case No. 19-11240 (LSS) (Bankr.

D. Del.); and *In re Synergy Pharmaceuticals Inc.*, Case No. 18-14010 (LGB) (Bankr. S.D.N.Y.). Hilco's special-situations services include strategic advisory and distressed mergers and acquisitions, turnaround and chapter 11 financing, financial restructuring and reorganizations, liability management, corporate governance, Article 9 sales, and litigation support.

10. I am one of the individuals at Hilco with primary responsibility for Hilco's engagement with the Debtor. References to actions taken by "Hilco" within this Declaration include actions I took in conjunction with other members of Hilco that I manage and supervise in connection with the investment banking services rendered to the Debtor.

11. Although Hilco is expected to be compensated for its work with the Debtor in the chapter 11 case, I am not being compensated separately for this Declaration or testimony.

## II. Marketing Process

12. On September 21, 2026, the Debtor retained Hilco to provide various restructuring advisory and investment banking services. Since commencing its engagement, Hilco has provided assistance in numerous areas including in connection with the Debtor's pursuit of debtor-in-possession financing and its sale process.

13. Specifically, with respect to the Debtor's sale process, in the period leading up to the Petition Date, Hilco assumed responsibility for and continued the Debtor's prepetition marketing efforts and prepared to conduct a robust postpetition sale process consistent with the milestones contemplated under the DIP Facility.[3]

14. In the weeks leading to the Petition Date, Hilco engaged in extensive dialogue with the Debtor's senior management, reviewed the Debtor's operations and assets, and developed a

[3] Before Hilco's engagement, the Debtor and its prior financial and investment-banking advisors had undertaken efforts to evaluate strategic alternatives and market the Debtor's business and assets. Upon its engagement, Hilco assumed responsibility for and continued those efforts.

plan for a value-maximizing sale process. To that end, Hilco worked with the Debtor to develop a set of marketing materials intended for distribution to prospective buyers of the Debtor's Assets, which included a teaser, confidential information memorandum, and the aggregation of key company documents located in an online data room for further diligence. In addition, Hilco worked with the Debtor to develop a broad list of suitable potential buyers.

15. Beginning in September 2026 and continuing thereafter, Hilco continued and expanded outreach to a broad universe of relevant strategic and financial parties to assess interest in an acquisition of all, or substantially all, of the Debtor's assets.

16. In total, Hilco reached out to approximately 135 parties and offered them the opportunity to participate in the sale process. Of those parties, 17 parties have expressed interest in participating, and as such parties enter into confidentiality agreements (an "NDA") and received access to the Debtor's confidential information memorandum and data room. To date, no third-party has made an actionable proposal to the Debtor.

17. Based on my experience, the time periods set forth in the Bidding Procedures Order and Bidding Procedures are reasonable and will provide all potential bidders with sufficient time and information to submit a bid for the Assets and do not prejudice parties in interest under the facts and circumstances of this chapter 11 case, including (i) the Debtor's dwindling liquidity and (ii) the Debtor's prepetition marketing efforts. In formulating the procedures and time periods set forth therein, the Debtor balanced the need to provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process.

18. Under the proposed timeline, there will be forty-four (44) days between the Petition Date and the Bid Deadline. I believe this period will provide parties with sufficient time, given the Debtor's limited liquidity and prepetition marketing, to formulate bids to purchase the Assets.

Further, extensive information regarding the Assets will be made available to Prospective Bidders in a virtual data room upon the execution of confidentiality agreements. Accordingly, parties that may have an interest in bidding will have adequate time before the Bid Deadline to conduct diligence and evaluate the Debtor's Assets so that they will not be bidding in a vacuum and can formulate a Bid on an informed basis.

19. I understand that, although the DIP Facility will provide the Debtor with access to necessary postpetition liquidity, access to additional funding under the DIP Facility is conditioned upon the execution and continued effectiveness of a Qualified Stalking Horse APA. Accordingly, the Debtor's ability to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement will not only establish a baseline bid for the Debtor's Assets, but also will permit the Debtor to access additional liquidity necessary to support its continued operations and sale process.

20. I believe the marketing and sale process contemplated by the Debtor is in the best interests of the Debtor's estate, will establish whether and to what extent a market exists for the Assets, and provides interested parties with sufficient opportunity to participate. Therefore, I believe that the Debtor's estate would be best served by approval of the Bidding Procedures Order.

**III. Need For a Timely Process**

21. Based on my thirty years of experience in the financial advisory and restructuring industry, including representing debtors or other parties in interest in connection with postpetition marketing and sale processes in chapter 11 cases, I believe that potential bidders are more likely to seriously pursue a sale transaction knowing that a bankruptcy court has approved a sale and marketing process and related bidding procedures.

22. Accordingly, I believe that approval of the Bidding Procedures sooner, rather than later, will increase the amount of time the Debtor can meaningfully engage potential bidders. I believe that longer engagement will result in greater due diligence and a higher likelihood that the

Debtor will receive one or more Qualified Bids. As a result, I believe approval of the Bidding Procedures on the timeline requested by the Debtor is more likely to lead to a sale transaction that maximizes the value of the Assets for the benefit of the Debtor's estate by generating earlier interest in the Assets.

23. Moreover, the facts and circumstances of this chapter 11 case require that the Debtor run an expedited, but robust, sale process. It is my understanding that the Debtor faces significant liquidity constraints and does not have sufficient liquidity to support a protracted sale process. Although the DIP Facility and the consensual use of cash collateral will provide liquidity to support the Debtor's continued operations and this chapter 11 case, access to additional funding under the DIP Facility is conditioned upon the Debtor entering into a Qualified Stalking Horse APA. The DIP Facility also requires compliance with certain sale milestones. Thus, pursuing the Sale in the manner and within the time periods prescribed in the Bidding Procedures is in the best interests of the Debtor's estate and will provide interested parties with sufficient opportunity to participate.

24. For the reasons described herein, I believe the proposed Bidding Procedures are necessary and appropriate to facilitate a fair and open sale process that will maximize the value received for the Debtor's assets, and therefore are in the best interest of the Debtor and its estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: November 3, 2026
New York, New York

By: */s/ Richard Klein*
Name: Richard Klein
Title: Executive Director and Head of Special Situations, Hilco Corporate Finance LLC

*Proposed Investment Banker to the Debtor*